## TRINITY & B. V. RY. CO. v. WILLIAMSON.
### (No. 7419.)

(Court of Civil Appeals of Texas. Dallas. Oct. 30, 1915. Rehearing Denied Dec. 4, 1915.)

1. RAILROADS ⬅➡443—INJURY TO STOCK ON TRACK — LIABILITY — SUFFICIENCY OF EVIDENCE.

In an action against a railroad for killing a mare on its track, evidence *held* to warrant verdict for plaintiff.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1608–1620; Dec. Dig. ⬅➡443.]

---

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**2. RAILROADS ☞413—INJURY TO STOCK ON TRACKS—FENCING—DUTY TO REPAIR.**

Where a railroad allowed the gate of its fence placed for the convenience of an adjoining landowner to become out of repair, it was liable for injury to stock of another landowner which came upon its right of way through such unrepaired gate and was killed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1459–1472; Dec. Dig. ☞413.]

Appeal from Hill County Court; J. D. Stephenson, Judge.

Action by R. A. Williamson against the Trinity & Brazos Valley Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Morrow & Morrow, of Hillsboro, for appellant. Will M. Martin and Walter Collins, both of Hillsboro, for appellee.

RAINEY, C. J. This suit was instituted by appellee against appellant to recover for the value of a mare which was negligently struck by one of appellant's engines and trains and was killed on its right of way. Appellant answered, denying negligence, that its right of way fence was in good repair, and that said animal was killed from causes unknown to appellant, and not through any negligence of its agents or employés. The cause was tried before a jury, and resulted in a verdict and judgment for appellee, from which this appeal is prosecuted.

## Conclusions of Fact.

[1] Appellee's horse escaped from his premises to those of one Yarbro, which adjoined, and through appellant's right of way fence onto its track, where said animal was killed. The appellant's track passed through the Yarbro farm, and for Yarbro's convenience two gates were placed in the right of way fence, one on the east side, and the other on the west side. The right of way fence and gate on the east side, through which the horse passed to the right of way, were out of repair, which evidenced negligence on the part of the appellant. One witness testified in reference to the gates and fence as follows:

"I kept the one on the west side closed, and the one on the east side was open and never closed. It was open when I went there and when I left there. * * * The fence on the east side of the railroad is torn loose from the posts in places, and the staples are out in some places. In some places the fence is down, and in some it is up."

An eyewitness to the killing of the animal (and there is no other testimony as to the exact manner of killing), testified as follows:

"I live on east side of track. I remember about a mare of Dr. Williamson being killed. I was living at the same place then, on the east side of the railroad. In working about Mr. Stephens' place, I went back and forth from my place to his. I crossed the Trinity & Brazos Valley Railway track. I remember where trestle was. Sometimes I would cross the railroad right of way at trestle, and sometimes I would go through gate where my house was. I went through the gate that morning; that gate is about 300 yards south from the trestle. I saw the mare killed. It happened in the morning, before sunup. I was standing on the crossing about 10 feet from the railroad when I saw her killed. What attracted my attention to it, the train was whistling, and the horses were running in front of it. The train was about 400 yards north of the trestle when I noticed it whistle, I reckon. There was some stock on the track at the time I looked up and saw the train. Some were in the center of the track, some on east side, on the dump, and some on the west side. I mean on the east and west of the rails. They were running south in front of train. The train was coming south. Engine was on south end of train. The engine had a fireman and engineer. I saw the engineer. The engine ran south to the bridge. They ran until they got to the bridge, and then slowed up. The horses were running across from the west side to the east side of the track, and the train hit one. I don't know how many there were. There was a bunch of them. They were Dr. Williamson's, I learned. I didn't know at the time. All but one cleared the track. The train struck her and knocked her onto the bridge, and fell off. She fell on the west side of the bridge. I was still standing on the crossing south of the trestle when this happened. The train continued south. I saw and spoke to the engineer. I told him he liked to have got the whole bunch. He replied, and said: 'They ought to keep them off.' I was about 200 yards south of where the mare was struck at the time. The engine didn't stop after she was struck. It came right on by me. It went just a short distance. I don't know how many minutes or seconds it was until he spoke to me. It would not take but a minute to get to where I was. The road looking north from that bridge or trestle up to 400 or 500 yards was straight, open, clear track. I don't know how many times the engine blew the whistle."

From which testimony we conclude that the engineer made no effort to check the train and prevent the striking the animal.

## Conclusions of Law.

[2] 1. Appellant complains of the giving of appellee's special charge, which is as follows:

"You are instructed that a gate in a right of way fence at a private crossing is a part of the 'fence,' and railroads are required to keep such gates in such repair as to prevent stock of ordinary disposition from escaping through and onto defendant's right of way through any such gates, and you are further instructed that the defendant is required to keep its road fences and gates in such repair as to effectually prevent stock from entering upon its roadbed and track."

In Railway Co. v. Webb, 102 Tex. 210, 114 S. W. 1171, where stock got on the railroad track through a gate in the right of way fence at a place where the railroad was not required to place a gate, it was held that:

"The liability [of the railroad] must be held to be the same as if the track had not been fenced at all at that place."

It is further held that:

"The question does not arise as to the duty of keeping gates closed when they have been put and kept in proper condition at places where railroad companies are required to keep them for the special benefit of the owners of inclosures through which the road passes."

It has been held by some of our appellate courts that, when a gate was placed in the

right of way fence for the benefit of the owner of the premises, the owner of stock could not recover when the gates were left open through which stock entered the right of way and was injured, unless showing negligence in the operation of the train connected with the injury of the stock. In this case, however, the proof shows that the gate had no fastening to it and stood open all the time, and that the fence was out of repair. We think it clear that it was the duty of the railroad company to keep its fence in sufficient repair to turn stock; otherwise it would be useless for the owner to keep the gate shut. We are also of the opinion that the company should have put the gate in proper condition for use, and kept it in such condition. Gates are usually constructed of such material as to require, after a time, repairing, and such expenses should not devolve upon the owner of the premises. Without deciding what the liability of the company on the question of not keeping the gate closed is, we think the evidence shows liability of the railroad on the other features of the case.

2. We think the evidence shows liability and warranted a verdict against the appellant on the issue as to how the animal was killed, and there is no reversible error in the charge of the court in relation thereto.

The judgment is affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes